Northern California General Secretariat for Health and Human Services Dear Office of Attorney Generals of the United States, My name is Angela, and I am from Honduras.    thank you so much for your service and thank you for coming here    We have three generations, and there are some accounts Good morning, Your Honor, Xander Lopez on behalf of Ms. Schemenauer. This case involves only one disputed issue, that is knowledge. Whether Ms. Schemenauer knew that there was an undocumented person in a highly specialized compartment of the car that she drove. Ms. Schemenauer denied knowledge. The government introduced evidence of prior acts where Ms. Schemenauer drove a car with two visible undocumented persons. Those prior acts didn't go to the element of knowledge, and in fact they went to different purposes, such as propensity. Because the district court allowed these prior acts to be introduced at trial, Ms. Schemenauer's conviction should be reversed. Reversal is also required since the indictment charging Ms. Schemenauer failed to allege an essential element of the offense of specific intent for aiding and abetting, and because of this, the indictment was fatally flawed. I will first discuss the 404B evidence. On the aiding and abetting, it was charged both with the principal offense and with aiding and abetting, is that right? That's correct, Your Honor. I'll first discuss the 404B, and then would Your Honor like me to discuss the aiding and abetting issue first? But on the principal offense, there was no omission of the need for proving intent. No. If we look at the indictment, which is on page one and two, the intent charged in the indictment is general intent, that she knowingly and in recklessly disregard committed these two offenses. The indictment completely omits the other essential element of specific intent, which is a conscious desire. So the grand jury was presented with indictment that only included one of the two elements necessary for aiding and abetting, and in fact, it could be said that it misled the grand jury in believing that only general intent was required for this aiding and abetting offense. And this court has made it clear that in DuBose, that each and every essential element must be alleged in the indictment, and because this essential element of an intent was not alleged, the indictment is fatally flawed, and Ms. Schemenauer's conviction must be reversed. In regards to the 404B evidence, Your Honors, the government repeatedly prior to the trial stated that they wanted to introduce prior acts of 2000 for the purpose and the sole purpose of knowledge. The government claimed that this was the only disputed issue, and it is the only disputed issue. The problem with the government's claims, however, is that, one, there was no logical connection between the prior acts and the charged offense to prove knowledge. And, two, the government, in fact, used the prior acts to prove other things other than knowledge, specifically propensity, which is specifically forbidden under the rules of 404B. In regards to the logical connection, both parties cite numerous cases, and all of those cases state that when the government is using prior acts to prove knowledge, there must be a logical connection between the knowledge gained in the prior act and the knowledge at issue in the charged offense. You know, I think one of our cases has acknowledged that there's a lot of confusion in the cases, so you picked, you know, 10 of them, and the government picked 10, and each one is trying to say that it's either on this side or the other side. My question to you, in light of our cases, is, even if there were not a logical connection between smuggling inside a container and driving a couple of people, Ukrainians, across the border, does the calculus change here because this woman, Teresa, was involved, and that is the similarity that tips it? Is that her name? That is her name, Teresa. I don't believe so, Your Honor. That similarity doesn't go to the purpose of the government introducing the prior acts, which is knowledge. Just because Ms. Schemenauer decided to continue a romantic relationship with Teresa didn't put her on notice that every time she crossed the border there would be a person Well, it wasn't a romantic relationship. It was that she and Teresa, Teresa was one of the participants, perpetrators, of that first smuggling incident, and now we've got Teresa's back again. Right. So that seems to me to distinguish it, although I still find it troubling. Right. Well, I think, if anything, the relationship with Teresa may have made Ms. Schemenauer suspicious, but this Court has specifically held that the issue of suspicion can't fall under 404B. Suspicion is a separate issue to knowledge, and what we need to look at is whether the prior acts of smuggling Ukrainians that are visible, and in fact, the government introduced other acts of smuggling without introducing any of the details, but it could be assumed that they were also visible, that they were also Ukrainians, and I think in the government's pretrial motions at Excerptive Record 39 through 40, they do indicate that all of the prior smugglings never involved Mexican citizens, like they did in this case, so Well, you wouldn't, if she, okay, if she drove two Ukrainians across the border and the government tried to introduce that as knowledge of a case where she's now driving two visible Mexicans, I assume you wouldn't argue, well, those were Ukrainians, these are Mexicans? No. I agree, Your Honor. I mean, that would probably be a much better case, but that's not the case here, and I think, in fact, this case is very similar to the case of Hernandez Miranda, where the court found that prior acts were inadmissibly admitted where the defendant previously crossed the border from Mexico to the United States with a backpack and marijuana on his person. Later, in the charge defense, he crossed the Mexican-U.S. border with drugs concealed in a compartment of his car. The court held that the prior act of carrying marijuana in his backpack didn't put him on notice, that he would later be crossing the border with drugs concealed in the car. Counsel, I, the distinction between hiding somebody in a box in a truck and carrying somebody visibly in the backseat is a good distinction, it's effective for you. The question that I have, I think, is similar to the one that I think Judge McKeon asked you, which is that the common connection here is Teresa, and if Teresa is not involved here, I think that the government probably does not get this prior act in. But Ms. Schemenauer's defense is that she was duped, and that Teresa took advantage of her. And isn't a prior act involving Teresa, in which Ms. Schemenauer has willingly and for profit tried to transport aliens across the border, working for Teresa, relevant to the question as to whether three years later, she's duped? I think the defense, one thing is that the defense of whether she was being duped was actually introduced because Ms. Schemenauer had to testify. I don't think that was actually part of what she stated to the secondary officer at the time of her arrest. Well, at the time of the arrest, she doesn't actually blame anything on Teresa, right? She's blaming it on Teresa's husband, so this is sort of an after acquired, I'm thinking about, as I think about this, and I think about the events, I actually think it's Teresa and not Teresa's ex-husband that's to blame here, so that fact doesn't seem to be relevant here. But I think ultimately we come back to the issue of whether she knew, whether she had knowledge. Well, she's going to be perfectly free to argue from the start of the trial to the end that she was duped by people in Tijuana, whether it was Teresa or Teresa's ex or somebody else. And the duping defense would still be good, might be an effective defense in front of a jury, even in light of the prior act. The question is whether the claim of that she is duped makes this prior act relevant to what she's doing now. I guess that tends to show more of propensity, Your Honor, than the knowledge, because it shows... that it could be used to show propensity. The question is, does it also show knowledge? I think it shows propensity and suspicion rather than propensity and knowledge. And because this Court has held that suspicion is a different issue than knowledge, then it shouldn't be admitted. And as I noted, the other problem with all of this evidence is that the government, in fact, used these prior acts not only to prove knowledge, but to prove other issues. Do you know whether the district court gave a Juul instruction? Are you familiar with the Juul? Yes, I am, Your Honor. Did the government give a Juul instruction in this case? I don't believe so, Your Honor, but I would have to verify that. But I don't believe that the district court did.  Counsel, if we were to disagree with you on the 404, would it still be inadmissible because it's so highly prejudicial? What cases do you have that might support that? Well, Your Honor, I do agree that it is highly prejudicial. And that goes back to my point of this evidence, the other acts being used for other purposes. I noted in my briefs that the government introduced other alleged lies made by Ms. Schemmenhauer during her 2000 arrest that were made in violation of Crawford. Specifically, the secondary officer during the 2000 arrest testified at this trial stating that the primary officer filed a report, and in that report she stated that Ms. Schemmenhauer stated that she said that these Ukrainians were brothers. That lie was repeated, alleged lie was repeated, over and over and over again by the government. In its opening at Excerpt of Record 182 to 181, during its direct of Officer Knox at 222, of Officer Bradley at 257. It's your point that even once it got let in, it was open season and it wasn't really cabined with a knowledge issue. Right, they were no longer using it for knowledge. They were saying, look, she's a repeated liar, she's a repeated smuggler. She lied then about them being family members. She's lying again. This is what she does. This is her M.O. She just lies and lies and lies to smuggle aliens across the border. And the government used it repeatedly during its closing argument. They stated she lied about them being family members in 2000. She's lying about them being family members again in 2003 when they were referring to the undocumented Ukrainians. So the government really milked these prior acts. And this is definitely prejudicial to Ms. Schemmenhauer. Because her story, her credibility was completely hurt by these prior acts. Not only to prove knowledge, but to prove propensity, to prove propensity to lie. I will reserve my remaining time for rebuttal. May it please the Court, Mark Rahe for the United States. Your Honors, I'm going to go right into the Rule 404B issue. Oh, am I just dismissed? Absolutely, Your Honor. I'm going to start right off with the Rule 404B issue. The district court here has a very deferential standard of view. The district court here has a very deferential standard of view. And that discretion was not abused in this case. Counsel, doesn't that go to the, doesn't abuse of discretion go to the question of admission once we find that it qualifies as 404B? Correct. But in this case, yeah, whether something falls under 404B is de novo. But nobody's doubting that here. This was an other act. This was separated by three years. That issue, we know that this is other act's evidence. In order for it to come in then, we apply the four-factor test. The question as to whether it's material and so forth, it seems to me, would be, might be open questions for us. I would respectfully disagree, Your Honor, because that question is always listed as the first of the four-factor test. Whether it goes to a material point, that's the first factor. Whether it was recent in time, that's the second. Whether there's sufficient evidence that this defendant committed the act is the third.  And I think if you review the case law every time, you know, and there are, as Judge McHugh pointed out, umpteen cases out there, I think you'll see that when you talk about materiality, it still gets that abuse of discretion. The last point is, what was the last point? Similarity if offered to prove intent. Right. And isn't that a question, is that a question of law? I think, well, I think that's a factual question, if anything, because you have to, the judge has to take evidence and say, well, this is what happened in the prior act. This is what happened here. But whatever the standard of review, Your Honors, I mean, I want to be clear here. And, I mean, if there was ever similarities between this, there are at least five or six. I know, I think I believe I pointed out four in my brief. Both the prior and the instant act involved transporting illegal aliens in a vehicle that the defendant was driving, at a port of entry, with Mexico, and they had the alleged involvement of Teresa Ahumada. And when I was reviewing the record, I found even a sixth one. The defendant owned the vehicle in both instances, and I think that's also significant. But if we were to take you at your word, leaving out Teresa for now. Sure. Every time some, I mean, most people don't smuggle aliens in their backpacks, for example. They're in some kind of a vehicle, if they're coming across at a port of entry. So, under your logic, any past conviction for alien smuggling would basically be evidence of some knowledge vis-a-vis a subsequent, would it not? No, Your Honor, because the facts can still be different. You know, one could be found transporting an alien in Las Vegas. This was a port of entry case. Another prior case, you may be a passenger in a vehicle you don't own. In this case, it's your vehicle. How many of us let random things happen to vehicles that we own? I mean, these kind of facts, I'm saying, you won't have a rubber stamp every single time in a subsequent case somebody has a prior conviction. You still got to look at the facts, and that's what the district court here did vigilantly. I mean, this issue was, it wasn't a fly-the-cuff thing. There was testimony. The court talked about it. They argued about it. I mean, it's not, I don't think you're going to get that slippery slope. But now, let's talk about Teresa, because I think you hit the nail right on the head. That is the single most important thing here. And it's interesting, because at no point in the opening brief, at no point in the reply brief, does the defense ever really acknowledge this fact. I was thinking of a hypothetical the other day. Let's say I rob a bank with a guy named Johnny. And I say, you know what, Johnny made me come along. And then it turns out that three years ago, I robbed two or three other banks with Johnny, and I said, you know what, I confessed at those times, and I said Johnny was my accomplice. Can we even conceivably say that that wouldn't be relevant evidence for a jury to know? And the important thing here, we didn't inject the Teresa Ahumada defense. That was the defendant. It comes out as early as their opening statement that Teresa took advantage of, you know, mistrust laid by the defendant, and how did she repay that trust through the reprehensible act of involving her as a blind mule. I mean, if that's not relevant under 404B, I don't know what is. I mean, that's just a very unique fact. And it's interesting, even if this Court has pause about this 404B without regard to Teresa Ahumada, it's interesting that the district court herself. I'll let defense counsel speak for herself, but as I understood part of her response to me, one of the reasons that they raised the Teresa Duke me defense was because they had to in response to the 404. I've kind of got a chicken and an egg problem here going on. It seems to me that they may have anticipated, based on the prior ruling and the fact that it was a previous trial, that the government was going to raise this and therefore sort of had to change their strategy in anticipation of what the government was going to argue. But you know what, Your Honor? Even if that's the case, I don't know any principle of law that says that somehow counts against the government. They choose their own defense. When that defendant chooses to take the stand and swears under penalty of perjury to tell the truth, if that's her story, that's what she has to be held to. And I don't know that there's this rule of law that says, you know, I was thinking of an analogous case. There's a Supreme Court case, Oler v. United States, where if a defendant claims that in limine, the district court made a wrong decision to allow a prior conviction for impeachment, if that defendant then decides to take the stand in front of that conviction, they waive the right to challenge it. I know it's not exactly an all fours here, but I thought maybe that idea would come up and I wanted to address it. I mean, the defense, they choose to make the defense that they want to. Here, and it wasn't a simple one, it was elaborate. I mean, the defendant took the stand and really played on the jury's sympathies, that I was there to take care of Teresa's daughter, and then Teresa, this is how she repaid me. But how then, if it's knowledge, because of the common characteristics that you mentioned, plus Teresa, what about the argument that knowledge is one thing, but then to use it, to use that whole scene with, you know, what the officer said on referral to secondary and what she said, that it was far beyond use for knowledge. You then sort of, once the government got it in, then it just went kind of whole hog. What is your response to that? I think once evidence is properly admitted, if it goes to impeachment, I still think that's a valid concern, Your Honor. But I thought it only comes in if it's relevant to knowledge. And it is relevant to knowledge, and that's without a doubt. But the impeachment, how does, whether these people are Ukrainians or members of their family, have anything to do with knowledge, the knowledge issue? Well, the other thing is, Your Honor, these were admissions of the defendant. I mean, and this evidence, it didn't just come out in that capacity. When she was arrested in August of 2003, and the defendant had her interview with Senior Inspector Knox, the testimony came out that even then she repeated that lie. So that's only, if anything, that's cumulative of other evidence that was already in the record. And of course, that goes to a harmless error point on the Crawford issue. I mean, the defense, they talk about this as if this entire memorandum, it was one sentence from a memo. The memo wasn't admitted into evidence. And this was one statement from Officer Bradley. But then in her own testimony, and as we endeavored to point out in our brief, now we're talking again about the Crawford issue, the defendant in her own testimony admitted that at the time of that primary inspection, and she made these admissions, there was no objection to that testimony whatsoever. It was asked, what happened then? The officer, you know, and she had a front seat passenger at the time. And apparently the primary inspector asked about the status of the two gentlemen in the back. The passenger said, oh, they're family members, they're the driver's brothers. The defendant admitted that she heard that. She's sitting right there. She made no efforts to correct that. That evidence came in on its own. So if this Court has any concern about the impeachment use that was made of that one statement, I would say it's not enough to shake the faith in the verdict. And the other thing I'd point out, I know defense counsel just got up and said that the government used this lie over and over and over again. I reread the closing argument, and it's interesting. I mean, I've done this job a few years. I've never seen such a short closing argument. And when you look at it, that one statement is mentioned once in the first closing of the government. It's mentioned once in the rebuttal. It's not mentioned over and over again. And I know that the defense characterizes it in their briefs as it was key to the government's attacks on the impeachment. If you look at the government's closing argument, we talk about, or the prosecutor, it wasn't my case, talks about three or four lies. And it's not the, this is the fourth one that's mentioned. And that's an excerpt of record, page 451. It talks about first that the defendant lied about the urgency of the medical condition of Susie. Then she admitted that she lied to the primary inspector Watson about having been in Mexico two weeks before the incident or arrest. And then she waffled on whether somebody had access to her car keys. And then on page 452 of the excerpt of record, then she gets, or the prosecutor's ma'am, then he gets to this point about her lying. So don't take that, we want to be sure about that. This wasn't something that was our magic evidence. This was one sentence from a primary inspector's memorandum that was brought out in Officer Bradley's testimony. It was mentioned once in closing, once in rebuttal, and it was cumulative to voluminous other impeachment. Counsel, opposing counsel, says that this prior arrest was used to show propensity. How do you respond to that? Disagree, Your Honor. And then when you look at the arguments, it's... I know. A little bit of a rhetorical flourish, Your Honor. This is one big point I want to make. The court gave not one, not two, not three, four separate limiting instructions about how this evidence was to be used. That's also something that I haven't seen in many of these cases before. Sometimes there's one. Here, you know, Officer Knox testified about prior events. Excerpt of Record 222. Court says this information is being offered for limited purpose, only for purpose of knowledge. The second and third times, Excerpt of Record 253, Excerpt of Record 258. This was during the actual testimony of Officer Bradley. The court, again, gives the limiting instruction. And then Excerpt of Record 477, and this is a direct quote, and this is during the instructions to the jury after closing argument, you have heard evidence of other wrongs in which defendant may have engaged. You cannot convict Ms. Schenmanauer of the charged offenses simply because you believe that she may have committed criminal acts in the past. And then the court even... There are a couple more times where the district court was vigilant on this issue. Excerpt of Record 252 to 253 says the defendant was on trial only for the crimes charged in the indictment, not for any other activities. And then at Excerpt of Record 476, she says it again. Now, let me ask this. I think we all agree that it's highly prejudicial. Now, should it have been excluded on that ground? No, Your Honor, and again, this is something... We'll agree it's prejudicial, but not improperly prejudicial. When this court talks about improper or undue prejudice under 403, it talks about the kind of thing that's likely to inflame the emotions of the jury or not go to a probative issue. Point out that this court... No, no, we admit that it's probative. You know, it's a balancing of probative against prejudice. And this is highly prejudicial. But then I would come back, Your Honor. This court in Ramirez-Jimenez, 967 F. 2nd at page 1327. This court has already held in the alien smuggling context that prior acts of smuggling are, quote, not the sort of conduct which would provoke a strong and unfairly prejudicial emotional response from the jury. And that's the same response that we would offer here. And we would also point out under 403 another concern is whether this takes an undue consumption of time. And it's interesting, before trial, I think even before the first trial in 04, the parties agreed in order to minimize any possible 403 concerns on that grounds that they would only, the government would only call one inspector from that prior incident. And that was Officer Bradley. And they did the same thing in the retrial. So if anything, not only, you know, the parties were vigilant to try to minimize these 403 concerns. Not only did the jury have repeated instructions that they were only to use this for a limited purpose, the government intentionally minimized the amount of time that this would take at trial. Ironically, by doing that, you may have stepped into the Crawford problem. By Officer Guzman, he really wasn't unavailable, or she wasn't unavailable, I guess. Right. And the record's not clear about that. And, you know, again, I didn't try the case. But I also want to point out one of the arguments, I mean, I'm pretty much assuming the Crawford error occurred here. When I pointed out that the defense had a prior opportunity to cross-examine Officer Guzman, it's not to excuse or to say that there's no Crawford error. It's just one more point to take into consideration in finding harmlessness. And we advanced a lot of points on that. So you're saying even if there's Crawford error, that that testimony was cumulative of the defendant's own statements to the officers on the second arrest. Correct, Your Honor. Not only of that, but also of, you know, and I think we listed six or seven other ways that her credibility had been impaired. I mean, one of them, in fact, I attached a record in our supplemental excerpts. She files a document, a vital records request in Orange County, where she swears under penalty of perjury that she's Teresa Ahamada's sister. I mean, there were numerous things pointed out that are egregious examples of her credibility. And so when you look at the whole record, I don't think that the issue that the appellant's filing as her second issue is actually something that merits reversal. Did I understand you to say that there was an opportunity for cross-examination, O'Guzman? Yes, Your Honor. And that was at the motion and liminary hearing. I believe it was March 16, 2004. We attached our supplemental excerpts of record are pretty thin. We attached that testimony in those supplemental excerpts. And again, it's not to say that no Crawford error occurred. It's just something, because I have a feeling when Your Honor sees Crawford error, it's probably going to be rare where somebody had a prior opportunity cross-examination, where you have one of the two things as opposed to neither of them. And maybe the last thing I touch on is the aiding and abetting. I think we're pretty much going to submit on our arguments in our brief. But I would just point out this Court has held for a long, long time that aiding and abetting is implied in every indictment. If it's implied in every indictment, then I don't see how one can jump to a conclusion that it's not properly pled. And as I reviewed the indictment here, too, each count says, with intent to violate the immigration laws. So I don't think there could have ever been any confusion here that this was a general intent crime. Thank you. Oh, you had? I'm sorry. And this will be really quick. Your Honor, one last thing on sufficiency of the evidence. One of the points that we made, and we would ask this Court for a holding, because this issue comes up a lot in our district. In the drug smuggling context, this Court has held repeatedly that being the driver and the sole occupant of a vehicle is sufficient evidence of guilty knowledge. This Court has held repeatedly in the drug smuggling context, but not in the ailing smuggling context. This is such a case, this driver, sole occupant, registered owner, if that issue can be clarified in any way that that principle also applies to the ailing smuggling context, it would be appreciated. Counsel, the same question I asked Ms. Lopez. Are you aware whether the district court gave a JUUL instruction? I don't think it did, Your Honor. I don't think ever that deliberate indifference was an issue here. Okay. Thank you. Thank you. Ms. Lopez? I'd just like to make a couple of points, Your Honor. First, in regards to the whole family member issue, the government claims that it was admissible as a party admission. The problem is that Ms. Cheminard never opened the door to this. This was brought in by the government in its opening statement and in its case in chief. And regardless if it's an admission, that doesn't change the fact that it's impermissible evidence of prior act. Also, the government does repeatedly, the government states that they only use this alleged lie briefly in their closing arguments. But in fact, they used it in their opening argument throughout their case in chief. And the way they used it was by the one statement, that one statement made by the primary officer, because of that one statement, the secondary officer in 2000 also asked Ms. Cheminard about it. And allegedly lied again. Then that statement made to secondary officer was then transferred to the 2003 secondary officer where she was asked about it again. And the government inferred that she lied about it again then. So this one statement, although it was a one statement, it was used repeatedly throughout the government's case in chief, in the opening, in the closing, on cross-examination of Ms. Cheminard and was used to show a propensity of Ms. Cheminard to lie and to smuggle aliens. And also, this whole propensity issue comes up again in the government's own brief on page 15 where he states that this evidence of the prior act shows that Ms. Cheminard is a determined smuggler. That this time she was more successful because she was such a determined smuggler. And that shows that, in fact, these prior acts weren't necessarily being used to prove knowledge, but were being used to prove propensity. And finally... Was there objection to that testimony? That is actually in the government's brief, Your Honor. Oh. That was not testimony? No, no. And that was not... But there was objections throughout and made in trial regarding both the family matter lies and the prior act evidence. And finally, in regards to aiding and abetting, again, I think the government points out that the indictment does allege a general intent crime. And it specifically says, knowing in reckless disregard. The problem is, nowhere in that indictment does it state that it was in conscious desire. So that's the key problem. I'll submit, Your Honors. Thank you. The case just argued. United States v. Cheminard is submitted. Thank counsel for remaining to the end and thank you for your arguments. We're now adjourned. All rise. This court for the session stands adjourned. Thank you.
judges: B. Fletcher, McKeown, Bybee